UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROSEZELL ROYLES, et al.,   :   NO. 1:06-CV-376
                         :
     Plaintiffs,        :
                         :
     v.                :   **OPINION AND ORDER**
                         :
SPRINGFIELD TOWNSHIP, OHIO,  :
et al.,                 :
                         :
     Defendants.        :

       This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 47), Plaintiffs' Response in Opposition (doc. 64), and Defendant's Reply (doc. 72). Also before the Court is Defendant's Motion to Strike the Affidavit of William T. Gaut and the Investigation Report Prepared by Plaintiffs' Consulting Expert (doc. 73), as well as Plaintiffs' Response in Opposition (doc. 75), and Defendant's Reply (doc. 76) For the reasons stated herein, the Court GRANTS Defendant's Motion for Summary Judgment, GRANTS Defendant's Motion to Strike, and DISMISSES this case from the Court's docket.


## I. BACKGROUND

       The facts of this case are not in dispute. On May 23, 2006, a BP gas station in Springfield Township, Ohio was robbed by two African-American men (doc. 47). During the robbery, one man confronted the gas station attendant with a revolver and fired three shots, nearly striking the attendant (Id.). The two robbers fled the crime scene, dropping a package of cigarettes (Id.).

Springfield Township Police Detective Patrick Kemper ("Detective Kemper")arrived at the gas station later that evening (Id.). Detective Kemper obtained four latent fingerprints from the door used by the robbers to enter and exit the gas station (Id.). On May 24, 2006, Detective Kemper sent the latent fingerprints and the cigarette package to the Hamilton County Sheriff's Office for processing (Id.). Detective Kemper received four matches from the gas station door, including Plaintiff Rosezell Royles, Curtis Strong II, Gary Stewart, and a BP employee, Sheree Miles.

On May 25, 2006, Detective Kemper searched the Ohio Law Enforcement Gateway for information regarding the three men whose fingerprints had been recovered (Id.). Because all three men had criminal records, Detective Kemper was able to obtain and compare their mugshots to photographs taken of the robbers by the gas station's surveillance system (Id.). Detective Kemper concluded that Mr. Royles' mugshot was nearly identical to the photographs of one of the armed robbers (Id.).

That same day, May 25, 2006, Detective Kemper filed a complaint, affidavit, and arrest warrant in the Hamilton County Municipal Court against Mr. Royles (Id.). Detective Kemper based Mr. Royles' arrest warrant on the fingerprint recovered from the gas station door, the comparison between Mr. Royles' mugshot and the surveillance photographs, and tips provided to the Springfield Township Police Department ("STPD") from Crime Stoppers (Id.).

On May 25, 2006, Mr. Royles traveled with his wife, Plaintiff Rhonda Royles to Las Vegas, Nevada for vacation (Id.). On May 26, 2006, after learning that he had been charged with the robbery, Mr. Royles retained an attorney (Id.). Mr. Royles resided in the city of Forest Park, Ohio, which adjoins Springfield Township, at all times pertinent to this lawsuit (Id.). The Forest Park Police Department ("FPPD") attempted to serve the arrest warrant on Mr. Royles on May 29, 2006, despite the fact that Mr. Royles was in Las Vegas (Id.). Mr. Royles daughter, Arielle Royles, was the only individual present at the residence during the 10 minute search of the home conducted by the FPPD (Id.). Defendant asserts that the Forest Park police officers caused no harm to Ms. Royles, and did not point a gun at her during the search (Id.). Plaintiffs allege, however, that the Forest Park police officers exhibited a greater show of force than necessary in the entrance and search of the home (doc. 64).

On May 30, 2006, Detective Kemper received information from the Hamilton County Sheriff's Office that the fingerprint found on the recovered cigarette package matched an individual named William McWhorter (doc. 47). Detective Kemper compared photographs of Mr. McWhorter with those taken from the surveillance camera, and determined that Mr. McWhorter was a more likely suspect than Mr. Royles (Id.). The arrest warrant for Mr. Royles was withdrawn from the STPD's computer system at approximately 4:35 pm

3

on the same day, May 30, 2006 (<u>Id.</u>).

Also on the afternoon of May 30, 2006, the FPPD received information from Mr. Royles' neighbors that Mr. Royles had returned home, and appeared to be preparing to leave town imminently (<u>Id.</u>). Relying upon this information, the FPPD dispatched officers to the residence where they found Mr. Royles in his car (<u>Id.</u>). The officers ordered him and his two passengers to exit the vehicle, handcuffed Mr. Royles and his passengers, and placed Mr. Royles in a police cruiser for approximately 15 to 20 minutes (<u>Id.</u>). A Forest Park officer subsequently contacted the STPD, which indicated that Mr. Royles was no longer suspected in the robbery (<u>Id.</u>). The Forest Park officers immediately released Mr. Royles and his passengers at that time (<u>Id.</u>).

On May 31, 2006, Detective Kemper contacted the Hamilton County Prosecutor's Office to request a dismissal of the criminal complaint, affidavit, and arrest warrant against Mr. Royles (<u>Id.</u>). On June 1, 2006, the Prosecutor's Office filed the dismissal entry which was thereafter signed by a municipal court judge (<u>Id.</u>).

Plaintiffs Rosezell Royles, Rhonda Royles, and Arielle Royles filed suit on June 19, 2006 (doc. 1). In their Complaint, Mr. Royles alleged that (1) Springfield Township violated his rights under the Fourth Amendment of the United States Constitution to be free from unreasonable search and seizure, and that he was subjected to a false arrest, (2) Springfield Township intentionally

4

caused him to suffer emotional distress, and (3) Springfield Township negligently caused him to suffer emotional distress (Id.) Mrs. Royles alleged a claim for loss of consortium based on her husband's claims, and while Arielle Royles is named as a plaintiff, she did not allege a specific claim against Springfield Township (Id.).

On May 1, 2008, Defendant filed its Motion for Summary Judgment, arguing that no material issues of fact exist with regard to Plaintiffs' claims (doc. 47). Defendant argues that Mr. Royles' constitutional rights under the Fourth Amendment were not violated, that Mr. Royles' federal civil rights claim is unsubstantiated, and that the Plaintiffs' state law claims are without merit (Id.).

Plaintiffs filed their response, arguing that genuine issues of material fact exist concerning the following: (1) the warrantless arrest of Mr. Royles and the warrantless search of Mr. Royles' home, (2) a STPD policy or custom, or a deficient-training program that led to the constitutional violations, (3) a claim of false arrest, (4) a claim of intentional and negligent infliction of emotional distress, and (5) a claim of loss of consortium (doc. 64). Defendant filed its Reply, and this matter is ripe for the Court's review.

Also before this Court is the Defendant's Motion to Strike the Affidavit of William T. Gaut and the Report Prepared by Plaintiff's Consulting Expert, which was filed on July 1, 2008

(doc. 73).  Defendant asserts that the affidavit and the Investigation Report referenced in the affidavit do not comply with Fed. R. Civ. Pro. 56(e) ("56(e)"), and as a result, should be stricken from the record (<u>Id.</u>).  Plaintiffs filed their Response to Defendant's Motion to Strike on July 22, 2008, in which they argued that this Court should deny the Motion because the affidavit complies with 56(e), and the Investigation Report is valid under Fed. R. Evid. 703 (doc. 75). Defendant filed its Reply, and this matter is ripe for the Court's review as well.

## II.  DEFENDANT'S MOTION TO STRIKE

In the Motion to Strike, Defendant argues that the Plaintiffs' reliance upon an affidavit from a previously disclosed expert witness, William T. Gaut, as well as the Investigation Report prepared by an unnamed consulting expert was improper because both do not comply with Fed. R. Civ. P. 56(e)(doc. 73). Section 56(e) sets forth requirements dictating the form of affidavits and other sources of information that parties may cite when moving for or opposing summary judgment.  According to the rule, supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts that would be admissible in evidence, and should show that the affiant is competent to testify to the matters stated within the writing.  Fed. R. Civ. P. 56(e). Defendant argues that Mr. Gaut's affidavit is not based on first-

hand personal knowledge as required by 56(e), and that the affidavit contains conclusory and unfounded statements which do not fit within the bounds of 56(e) (<u>Id.</u>). According to the Defendant, the Sixth Circuit has declared that "[a]n expert opinion must 'set forth facts' and in doing so, must outline a line of reasoning arising from a logical foundation." <u>Brainard v. American Skandia Life Assur. Corp.</u>,432 F.3d 655, 664-64 (6th Cir. 2005), <u>citing</u> <u>Am. Key Corp. V. Cole Natl. Corp.</u>, 762 F.2d 1569, 15790-80 (11th Cir. 1985). The Defendant argues that Mr. Gaut's affidavit fails for this reason alone.

Defendant further claims that the Investigation Report should be stricken because of its failure to comply with the additional mandate of 56(e) which provides "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith" (<u>Id.</u>). Defendant claims that there is no evidence that the Investigation Report is a sworn or certified copy and there is no record as to its author. (<u>Id.</u>).

In response, Plaintiffs argue that Mr. Gaut's affidavit complies with 56(e) because his personal knowledge of the lawsuit is derived from his reliance upon facts shown by admissible evidence (doc. 75). Plaintiffs claim that Mr. Gaut reviewed the facts of the case "from admissible evidence, which was summarized and reviewed by Plaintiffs' consulting expert in his/her

7

investigative report" (Id.).  Plaintiffs also assert that the requirement contained in 56(e), that "[s]worn or certified copies of all papers ... to an affidavit shall be attached" is not implicated in this case because the Investigation Report was prepared by a non-testifying or consulting expert (Id.). Plaintiffs additionally urge that while the Investigation Report is inadmissible, it should not be stricken because Mr. Gaut could base his opinion upon it under Fed. R. Evid. 703 (Id.).

In its Response, Defendant maintains that the affidavit and the Investigatory Report should be stricken because Mr. Gaut could not have had personal knowledge of the facts of the case and there is no justification for this Court to rely upon the Investigation Report (doc. 76).

Having reviewed the matter, the Court concludes that Defendant's Motion to Strike is well-taken.  Plaintiffs have not established that Mr. Gaut's affidavit complied with 56(e) because Mr. Gaut's personal knowledge of the facts of the case does not meet the required standard.  While Plaintiffs argue that Mr. Gaut's review of the Investigation Report allowed him to gather personal knowledge of the facts, they fail to provide any controlling or persuasive authority for this proposition.  Further, the Investigation Report should be stricken because it does not meet the standards set forth in 56(e).  There is no evidence that the Investigation Report is a sworn or certified copy, and Plaintiffs'

argument that this requirement does not apply to the present case is not convincing. Plaintiffs' additional claim that the Investigatory Report should be admitted because it is a valuable source to the Court and the jury is not well-taken. The identity of the consulting expert who prepared the report remains a mystery, the report itself is inadmissible, and any "lengthy document" which the Plaintiffs claim the report synthesizes would have to be admitted into evidence regardless. Therefore, this Court finds it appropriate to strike Mr. Gaut's affidavit as well as the Investigation Report prepared by Plaintiffs' consulting expert.

## III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Applicable Legal Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must

determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party seeking summary judgment. . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.  See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the

motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts

upon which the non-moving party relies." Guarino, 980 F.2d at 405,

quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th

Cir. 1989) (internal quotation marks omitted). In contrast, mere

conclusory allegations are patently insufficient to defeat a motion

for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d

1155, 1162 (6th Cir. 1990). The Court must view all submitted

evidence, facts, and reasonable inferences in a light most

favorable to the non-moving party. See Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H.

Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc.,

369 U.S. 654 (1962). Furthermore, the district court may not weigh

evidence or assess the credibility of witnesses in deciding the

motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating

that no material facts are in dispute. See Matsushita, 475 U.S. at

587. The fact that the non-moving party fails to respond to the

motion does not lessen the burden on either the moving party or the

Court to demonstrate that summary judgment is appropriate. See

Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455

(6th Cir. 1991).

**B. Discussion**

**1. Plaintiff's Fourth Amendment Claim**

Plaintiff Rosezell Royles brings his Fourth Amendment

claim pursuant to 42 U.S.C. § 1983. Because respondent superior

liability is not available as a means of recovery under § 1983, <u>Doe</u> <u>v. Claiborne County</u>, 103 F.3d 495, 507 (6th Cir. 1996), a plaintiff must demonstrate that the municipality itself was a wrongdoer.  To hold a municipality liable, a plaintiff must prove that the municipality "caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" <u>City of St. Louis v.</u> <u>Praprotnik</u>, 485 U.S. 112, 121 (1998) <u>qouting</u> <u>Monell v. New York</u> <u>City Dept. of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).  A plaintiff must also show that the municipality's policy (or lack thereof) was a "moving force" in the deprivation of the plaintiff's rights and arose from "deliberate indifference" to the plaintiff's rights. <u>Claiborne County</u>, 103 F.3d at 508.  To prevail on a failure-to-train claim under § 1983, a plaintiff must prove: "that a training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." <u>Hill v. McIntyre</u>, 884 F.2d 271, 275 (6th Cir. 1989).  Liability cannot be imposed unless "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the [governmental body] can reasonably be said to have been deliberately indifferent to the need." <u>City of Canton v. Harris</u>, 489 U.S. 378, 390 (1989).  To

demonstrate that a municipality is deliberately indifferent to training needs, a plaintiff should show that the policymakers for the municipality were aware of, and acquiesced in, a specific pattern of similar constitutional violations. <u>Harris</u>, 489 U.S. at 397 (O'Connor, J., concurring).

Plaintiff alleges that Springfield Township violated his Fourth Amendment rights by subjecting him to an unreasonable search and seizure and by his false arrest (doc. 64). Mr. Royles argues that because his arrest occurred after the arrest warrant had been withdrawn, and because the search of the Royles' home occurred without a search warrant, both the arrest and search are unreasonable (<u>Id.</u>). Plaintiff claims that the FPPD acted unreasonably by failing to check for an arrest warrant before arresting Mr. Royles (<u>Id.</u>) Next, Plaintiff alleges that the STPD acted unreasonably by failing to communicate the withdrawal of Mr. Royles' arrest warrant to the FPPD (<u>Id.</u>). Plaintiff further argues that Detective Kemper's investigation failed to provide the necessary basis for probable cause to issue an arrest warrant for Mr. Royles (<u>Id.</u>). Plaintiff also claims that the search of the Royles' home conducted by the FPPD was unreasonable due to the lack of a search warrant, a lack of probable cause, and a lack of any exigent circumstances necessitating the search (<u>Id.</u>).

Plaintiff also alleges that the manner in which he was arrested was unreasonable because the police had no probable cause

or urgent need for the arrest because he was not preparing to flee when the FPPD arrived, and further, the suspected robbery was not a serious crime justifying fear for officer or public safety (Id.). As a result, Plaintiff alleges that the FPPD action of blocking and surrounding his car with armed officers was more intrusive than necessary (Id.).

In response to Plaintiff's Fourth Amendment claims, Defendant argues that neither Springfield Township, nor any Springfield Township agent or employee violated Mr. Royles' right to be free from an unreasonable search or seizure or subjected him to a false arrest (doc. 72). Defendant sets forth that it is undisputed that no member of the STPD ever arrested Mr. Royles or searched his residence (Id.). Therefore, Defendant claims that it cannot be held liable for the actions of a separate political subdivision - in this case the City of Forest Park, a party which has been dismissed from this lawsuit (Id.). Defendant nonetheless argues that Springfield Township caused no constitutional violation because Detective Kemper had probable cause to issue the arrest warrant for Mr. Royles based on the latent fingerprint recovered from the gas station door, the comparison between Mr. Royles' mugshots and the photographs obtained from the surveillance camera, and tips from Crime Stoppers (Id.).

As mentioned previously, a plaintiff setting forth a § 1983 failure-to-train claim must make numerous showings regarding

the municipality's allegedly inadequate training program. Mr. Royles alleges that Detective Kemper's failure to follow the STPD's policies and procedures for evaluating evidence, investigating crime scenes, and providing information to the media indicates negligent supervision and inadequate training on behalf of the STPD (doc. 64). Plaintiff argues that Detective Kemper's crime scene investigation was marred by significant errors that directly violated departmental policies and procedures (Id.). Mr. Royles also alleges that Detective Kemper's errors continued after leaving the crime scene (Id.). Further, Plaintiff claims that the release of Mr. Royles' identification to the media violated departmental policies because it was not based on the need to warn the public of a potential danger and because the release was not properly approved (Id.). In conclusion, Mr. Royles argues that because Detective Kemper believed his investigation was adequate despite the alleged errors, an inference can be drawn that he was poorly trained and instructed on how to conduct a proper investigation (Id.). As a result, Plaintiff alleges that the STPD's failure to train and supervise Detective Kemper led to or caused an arrest warrant to be issued without probable cause, and permitted the illegal search of the Royles' home (Id.).

Plaintiff also points to the FPPD's failure to check for a warrant, and the STPD's failure to communicate the withdrawal of the warrant as evidence of inadequate training, policies, or

procedures which caused the illegal arrest of Mr. Royles (Id.).

Plaintiff asserts that the STPD should have known that the FPPD

would attempt to arrest a wanted suspect in their jurisdiction, and

that if the STPD would have enforced policies to communicate with

other police departments regarding the status of warrants, the

arrest of Mr. Royles would not have occurred (Id.).

Defendant responds that Plaintiff's allegations are

completely without merit (doc. 72). First, Defendant argues that

Detective Kemper is a highly respected officer who complied with

generally accepted police practices and procedures in conducting

the crime scene investigation, the subsequent investigation of Mr.

Royles, and the release of information concerning Mr. Royles to the

media (Id.). Defendant further argues that despite Detective

Kemper's general compliance with the policies and procedures, in

the event that errors were committed, the Sixth Circuit Court of

Appeals has found that an individual police officer's lack of

complete familiarity with a department policy manual is not

sufficient to create an issue of fact regarding the inadequacy of

a particular training program. Stemler v. City of Florence, 126

F.3d 856, 865 (6th Cir. 1997). Next, Defendant claims that Mr.

Royles has failed to show that Springfield Township policymakers

either knew of or acquiesced to the alleged constitutional

violation present in this case (Id.). Finally, Defendant argues

that Plaintiff has not set forth any evidence demonstrating a clear

and persistent pattern of constitutional violations (Id.).

The Court finds that the Plaintiff has not provided sufficient evidence to support its § 1983 claim. First, the Court finds that the record does not support that Plaintiff's Fourth Amendment rights were violated by the Defendant. No member of the STPD arrested Plaintiff or searched his home, and thus, Plaintiff's claim that he was subjected to an unreasonable search and arrest by Defendant fails. Nonetheless, Detective Kemper surely had probable cause to issue the arrest warrant for Plaintiff. At the time Detective Kemper issued the arrest warrant, he had obtained sufficient evidence to cause a reasonable police officer to believe that Plaintiff had committed the robbery. This probable cause was based on the fact that Plaintiff's fingerprint was found at the crime scene, the close resemblance between Plaintiff's mugshot and the surveillance photographs, and the tips from Crime Stoppers which connected Plaintiff with the robbery. Detective Kemper should be commended for the manner in which he gathered evidence from the crime scene, and then quickly moved to exonerate the Plaintiff when he discovered that the evidence suggested a more likely suspect.

Concerning the Plaintiff's allegations regarding Defendant's inadequate training of its police, this Court finds that Plaintiff has not met the necessary requirements to set forth such a claim. The evidence in the record demonstrates that

Detective Kemper actively investigated the crime scene, and acted with due diligence in determining that Plaintiff was not involved in the robbery. Plaintiff has not set forth sufficient evidence to demonstrate that Detective Kemper did not comply with generally accepted police practices and procedures during the immediate and subsequent investigation of the robbery, and in his use of the media to alert the public about the robbery and potential suspects. The use of Crime Stoppers by police officers should be encouraged, as it represents a valuable medium in alerting the public to potentially dangerous criminals. The evidence also suggests that Detective Kemper is a well-recognized officer who has attended numerous seminars and has received a number of certifications and commendations.

Even if Detective Kemper failed to follow all policies of the STPD, the United States Supreme Court has noted that this showing is insufficient to hold a municipality liable under a failure to train theory. As the Court noted, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." City of Canton, 489 U.S. at 390-91. Further, a plaintiff cannot ordinarily show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to

respond. <u>Id.</u> In this case, Plaintiff has failed to make this showing, as he has only set forth one potential constitutional violation. For the above reasons, this Court finds that Plaintiff's § 1983 claim lacks sufficient support to survive a finding of summary judgment in favor of the Defendant.

### 2. Plaintiffs' State Law Claims

In addition to Mr. Royles federal civil rights claim under § 1983, Plaintiff alleges additional state law claims against Springfield Township for intentional infliction of emotional distress and negligent infliction of emotional distress (doc. 64). Additionally, Mrs. Royles sets forth a claim for loss of consortium (<u>Id</u>.). Because the Court finds summary judgment is appropriate on the federal claim, the Court declines to accept supplemental jurisdiction of Plaintiffs' state law claims, and finds that they should be dismissed without prejudice.

## IV. CONCLUSION

Even had the Court not granted Defendant's Motion to Strike, the evidence presented by Plaintiff would not be persuasive. It is unfortunate that Mr. Royles was briefly arrested by the Forest Park Police Department, but there is no evidence in the record to suggest that an inadequate training program instituted by the Springfield Township Police Department led to this arrest. Accordingly, for the reasons indicated herein, the

Court GRANTS Defendant's Motion for Summary Judgment (doc. 47) and Defendant's Motion to Strike (doc. 73) and DISMISSES Plaintiffs' 42 U.S.C. § 1983 Claim WITH PREJUDICE, and Plaintiffs' state law claims WITHOUT PREJUDICE.

       SO ORDERED.

Date: February 25, 2009      /s/ S. Arthur Spiegel
                                  S. Arthur Spiegel
                                  United States Senior District Judge